Kristen A. Perry, Esq.
440 County Route 513
Califon, New Jersey 07830
908-975-3036
Attorney for Plaintiff, Esther Psarakis

RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

APR 2 7 2015

AT S:_____ 4 P M
WILLIAM T. WALSH, CLERK

ESTHER LUONGO PSARAKIS, an
individual

**Civil Action No. 15-**

Plaintiffs,

**VERIFIED COMPLAINT**

V.

**and**

**DEMAND FOR JURY TRIAL**

DOMENICK CELENTANO, an individual,
and GoDaddy, LLC a Delaware
Limited Liability Company,

Defendants.

Plaintiff ESTHER LUONGO PSARAKIS by her attorney, Kristen A.
Perry complaining of defendants DOMENICK CELENTANO and GODADDY,
LLC says:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Esther Luongo Psarakis ("Ms. Psarakis") is a
citizen of the State of New Jersey, with an address at 50 Claire
Drive, Bridgewater, New Jersey 08807.

2. Defendant Domenick Celentano ("Mr. Celentano") on
information and belief is a citizen of the State of New Jersey,

having an address at 26 Springbrook Road West, Montville, New Jersey 07045.

3.    Defendant GoDaddy, LLC is a Delaware Limited Liability Company with a principal place of business at 14455 North Hayden Rd., Suite 219, Scottsdale, AZ 85260.

4.    This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1331; this action arises out of Mr. Celentano's violations of the Lanham Act  (15 U.S.C.§1114 (1) and §1125 (a) and (d)) and state law claims for tortious interference with a prospective business advantage, trademark infringement and unfair competition.

5.    This Court has personal jurisdiction over Mr. Celentano by virtue of, among other things, his place of residence in New Jersey and his registration of certain electronic mail and domain name accounts described below identifying his address as in Montville and Livingston, New Jersey.

6.    This Court has personal jurisdiction over GoDaddy by virtue of, among other things, its continuous and regular business activities in New Jersey including its providing domain name registration and hosting services to New Jersey residents and through this judicial district. Thus, GoDaddy is subject to this Court's specific and general personal jurisdiction pursuant to due process and GoDaddy's substantial business in this forum, including, but not limited to regularly doing or soliciting business, engaging in persistent courses of conduct, and/or deriving substantial revenue from goods and/or services provided to individuals in New Jersey and in this judicial district.

7.    Venue is proper in this District because Mr. Celentano is subject to personal jurisdiction in this judicial district.

### ALLEGATIONS COMMON TO ALL COUNTS
### Ms. Psarakis' Background and Trademarks

8.    Ms. Psarakis is the sole and exclusive owner of the federally registered trademark FOODPRENEUR, Reg. No. 3,503,652 (the "Mark"). See Exhibit A attached hereto, copy of Registration.

9.    The Mark is live, in good standing and incontestable. The certificate of registration serves as prima facie evidence of Ms. Psarakis' ownership of the Mark, the validity thereof, and the exclusive right of Ms. Psarakis to use the Mark shown therein in connection with the services set forth in the certificate of registration.

10.    Ms. Psarakis maintains the registration with the U.S. Patent and Trademark office.

11.    Ms. Psarakis has used the Mark since as early as July 15, 2006 and in interstate commerce since at least April 29, 2007, in association with services including marketing consulting and public relations in the field of specialty/natural/food company management and development (in International Class 035) and including, but not limited to, arranging of exhibitions, seminars and conferences; conducting workshops and seminars in the field of small business specialty/gourmet food company development, management, distribution and entrepreneurship (in

International Class 041). See Exhibit B, copy of USPTO database printout.

12.    Ms. Psarakis has promoted her services under the FOODPRENEUR mark through a variety of media and outlets both domestically and internationally.

13.    This registration along with any common law rights that have been developed over time shall collectively be referred to hereafter as the "Mark".

14.    Ms. Psarakis is the creator of certain slogans and tag lines associated with the services provided under the Mark, including "Get your product idea out of the kitchen, Onto the retailers' shelf, And onto the consumer's plate!" (the "Tag Line") (the Mark and the Tag Line shall collectively be referred to as the "Marks"),

15.    Ms. Psarakis has used the Tag Line since as early as March 31, 2011.

16.    Ms. Psarakis has spent time, money and effort developing the services and related Marks, which Ms. Psarakis has used in interstate commerce in association with the services she provides.

## Defendant Celentano's Infringing Activities and Bad Faith Conduct

17.    On or about 2003 – 2004 Ms. Psarakis met Mr. Celentano at the Small Business Development Center (SBDC) at Raritan Valley Community College, where, on information and belief, Defendant

worked as a counselor for entrepreneurs entering the food industry and Mr. Celentano counseled Ms. Psarakis in his capacity as a SBDC advisor.

18.    On or about 2005-2006 Ms. Psarakis and Mr. Celentano bartered for services, including Mr. Celentano's advisory services, in various business enterprises.

19.    In 2007, Ms. Psarakis commenced providing services in interstate commerce under the Mark.

20.    At this time, Mr. Celentano acted in a consulting capacity to Ms. Psarakis and her services offered under the Foodpreneur name.

21.    On or about April 28, 2007, with Ms. Psarakis' authorization and consent, Mr. Celentano registered the domain name www.thefoodpreneur.com through Defendant GoDaddy's website, for the purpose of promoting the Foodpreneur programs (the "Domain Name"). See Exhibit C, "whois" registry information.

22.    Ms. Psarakis paid $750.00 for initial website development and has paid the yearly website hosting fee associated with www.thefoodpreneur.com.

23.    In 2007, Ms. Psarakis and Mr. Celentano registered various email addresses including esther@thefoodpreneur.com (the "Esther Email") and info@thefoodpreneur.com (the "Info Email") (collectively, the "Email Accounts") through GoDaddy's services.

24.    Since 2007, the Email Accounts have been renewed without incident.

25.    Over the years, Ms. Psarakis has disseminated business cards and marketing materials domestically and internationally

bearing the Domain Name and the Esther Email address and has sent and received hundreds if not thousands of emails from the same email address.

26.    The  Esther  Email  address  houses  numerous  client contacts and information, prospective engagement opportunities and other valuable business information.

27.    At  all  times,  Ms.  Psarakis  maintained  exclusive ownership of the Mark and exclusive control of the authorized use of the Mark.

28.    At that time, any use of the Mark by Mr. Celentano was with Ms. Psarakis knowledge, authorization and consent.

29.    At  no  time  did  Ms.  Psarakis  transfer  ownership  or control of the Mark to Mr. Celentano.

30.    Mr. Celentano has confirmed that Ms. Psarakis is the owner of the Mark and that he has no interest – ownership or otherwise – in the Mark.  See Exhibit D, August 22, 2014 email from Mr. Celentano, penultimate paragraph and September 1, 2014 email, paragraph third, sent on behalf of Mr. Celentano.

31.    In the same September 1, 2014 email sent on his behalf, Mr. Celentano indicates that the www.thefoodpreneur.com website "no  longer  exists"  when  in  fact,  the  URL  now  automatically directs to Mr. Celentano's own website, www.foodbevxpert.com. See Exhibit D, September 1, 2014 email, paragraph fifth, sent on behalf of Mr. Celentano.

32.    From 2006 until about August 2014, Ms. Psarakis was under the impression that she and Mr. Celentano continued to have an amicable professional and personal relationship.

6

33. On or about March 31, 2014, Ms. Psarakis paid for the renewal of all email accounts associated with the Domain Name, including esther@thefoodpreneur.com, info@thefoodpreneur.com, domcelentano@thefoodpreneur.com as well as the renewal for the Domain Name registration.

34. On or about August 2014, Ms. Psarakis discovered that she was unable to access the Info Address email account.

35. Upon information and belief, on or about July 2014 Mr. Celentano edited the www.thefoodpreneur.com website without Ms. Psarakis' knowledge, consultation, permission or authorization.

36. Upon information and belief, on or about August 2014 Mr. Celentano altered security settings to the www.thefoodpreneur.com website account effectively precluding Ms. Psarakis from editing content or making other changes thereto.

37. Upon information and belief, on or before August 2014 Mr. Celentano proceeded to automatically redirect the URL for the Domain Name to his own business web site www.foodbevxpert.com.

38. On November 22, 2009, with Ms. Psarakis' knowledge, information and consent, Mr. Celentano registered the domain name www.thefoodpreneurbootcamp.com in order to promote seminar and workshops Ms. Psarakis and Mr. Celentano offered to clients.

39. On or about August 24, 2014, without Ms. Psarakis' authorization or consent, Mr. Celentano redirected the www.thefoodpreneurbootcamp.com URL to his own web site www.foodbevxpert.com. See Exhibit E "Recent Site Activity" and screen shot of the www.foodbevxpert.com home page with the URL of www.thefoodpreneurbootcamp.com.

7

40. Starting on or about August 3, 2014 Ms. Psarakis contacted Mr. Celentano expressing her concerns about the changes to the website, the redirection of the websites and the access to the Info Email Account. See Exhibit F, copy of email thread from August 3, 2014 through August 21, 2014 between Ms. Psarakis and Mr. Celentano.

41. Mr. Celentano did not provide Ms. Psarakis with access to the Info Email account or to the website in response to her communications.

42. On or about September 5, 2014 Ms. Psarakis put Mr. Celentano on notice (a) to cease and desist his various infringing uses of the Mark and Tag Line; (b) to rectify the infringing uses of the Domain Names; (c)that the email address esther@thefoodpreneur.com was intrinsic to her business success and that it contained valuable business information; and (d) that she required immediate access to the passwords for the websites and full and exclusive control of the website so as to stem damage to her ability to do business as the Foodpreneur and to avoid confusion in the marketplace. See Exhibit G, Ms. Psarakis email correspondence to Mr. Celentano.

43. Mr. Celentano did not comply with these requests.

44. Ms. Psarakis was still able to access the Esther Account through April 7, 2015.

45. On or about April 9, 2015, while on the telephone with a GoDaddy representative, Ms. Psarakis discovered she no longer had access to her email account esther@thefoodpreneur.com.

8

46. The GoDaddy representative informed Ms. Psarakis that she would need Mr. Celentano's two-step password protection information in order to access the Esther Account.

47. Ms. Psarakis immediately contacted Mr. Celentano to request that access be re-established. See Exhibit H, April 9, 2014 email from Ms. Psarakis to Mr. Celentano.

48. Ms. Psarakis did not receive a response from Mr. Celentano.

49. On or about April 9, 2015 Ms. Psarakis again contacted GoDaddy, whereupon a representative of GoDaddy advised Ms. Psarakis that all email accounts associated with the Domain Name would be accessible for some indeterminate period of time and he could not confirm when access would end.

50. Despite numerous telephone calls and emails to GoDaddy, Ms. Psarakis has been unable to confirm whether the emails can be retrieved.

51. Ms. Psarakis continued to plead with Mr. Celentano to cooperate with her requests.

52. Ms. Psarakis did not receive a reply from Mr. Celentano.

53. On April 14, 2015, Ms. Psarakis' attorney contacted Mr. Celentano and reiterated Ms. Psarakis' requests. See Exhibit I, April 14, 2015 correspondence from Kristen A. Perry, Esq. to Mr. Celentano.

54. On April 20, 2015 Mr. Celentano responded to Ms. Psarakis' attorney's correspondence with a refusal to cooperate with Ms. Psarakis' repeated requests. See Exhibit J, Mr.

9

Celentano's April 20, 2015 response including attachment dated April 19, 2015 with exhibits attached thereto.

55. Mr. Celentano asserted in his response that he has no association with the Mark, is not using the Mark and that he intended to allow the domain name www.thefoodpreneur.com to lapse unless Ms. Psarakis paid him $5,000.00 for the Domain. See Exhibit J, page two, throughout.

56. On April 20, 2015, Ms. Psarakis' attorney responded to Mr. Celentano's letter in part. See Exhibit K.

57. On April 22, 2015, Mr. Celentano responded to the April 20, 2015 letter and reiterated that he would not comply and would only sell the Domain to Ms. Psarakis for $5,00.00[sic]. See Exhibit L.

58. The www.thefoodpreneur.com domain name will not become immediately available and may never be available to Ms. Psarakis. See Exhibit M, GoDaddy policy regarding expired domain names.

59. The GoDaddy website sets forth the steps to effectuate the requested Account Change from one GoDaddy account holder to another GoDaddy account holder. See Exhibit N, GoDaddy "Moving a Domain out of Your Account".

60. The Domain Name registration expires on April 28, 2015. See Exhibit O, whois registry information for www.thefoodpreneur.com.

61. On or about April 3, 2015 Ms. Psarakis received email correspondence from a prospective client who expressed confusion regarding the origin of the services Ms. Psarakis provides as a

10

direct result of Mr. Celentano's infringing use of the Mark.  See Exhibit P, excerpt of email to Ms. Psarakis and her colleague.

62.    In response to Ms. Psarakis' repeated requests for assistance from GoDaddy, GoDaddy has repeated that without a Court Order it cannot and will not take any action on Ms. Psarakis' behalf.

63.    Mr. Celentano's aforementioned unlawful acts have caused and will continue to cause irreparable harm to Ms. Psarakis and her Marks and to the business and substantial goodwill represented thereby and said acts will continue to damage Ms. Psarakis unless restrained by this Court.

## FIRST COUNT

### Tortious Interference with Economic Advantage

64.    Ms. Psarakis repeats and makes a part hereof each and every allegation set forth in the paragraphs 1 through 63 of the Verified Complaint.

65.    Ms. Psarakis has received and  reasonably expected to continue to realize economic advantages from the widely-disseminated Email Addresses.

66.    The Domain Names incorporate Ms. Psarakis' valuable Mark.

67.    Ms. Psarakis communicated the importance of access to the Email Addresses and Domain Name to Mr. Celentano on numerous occasions.

68. Ms. Psarakis has repeatedly requested that Mr. Celentano stop using her Marks and stop redirecting clients to his company via the Domain Names.

69. Without forewarning or cooperation after the fact, Mr. Celentano intentionally and maliciously interfered with Ms. Psarakis' right to communicate with existing and potential clients by denying access to the Email Addresses and allowing the Email Addresses to expire.

70. The email addresses are of no value to Mr. Celentano.

71. Mr. Celentano refuses to effectuate and Account Change of the Domain Names to Ms. Psarakis and will allow the Foodpreneur Domain Name to expire without payment of $5,000.00.

72. This interference with Ms. Psarakis' email communications has caused and is causing a loss of prospective gain to Ms. Psarakis.

73. The redirecting of the Domain Names is causing a loss of prospective gain to Ms. Psarakis and is causing consumer confusion.

74. But for this interference, it is reasonably probable that Ms. Psarakis would continue to benefit economically from continued communication under these email addresses and obtain and retain clients via domain names incorporating her valuable Mark.

75. Notwithstanding Defendant's infringing use of the Mark in association with the Domain Names, his knowledge and acknowledgement that Ms. Psarakis is the exclusive and rightful owner of the Mark and his lack of any interest in the URL,

12

Defendant has refused to assign the Domain Name without a payment of $5,000.00.

76. Ms. Psarakis has in the past and has offered again to pay for all GoDaddy costs associated with the activation of the email account and Account Change of the Domain Name.

77. Without a court order, GoDaddy will not provide any information or relief to Ms. Psarakis.

78. Without Mr. Celentano's password information, GoDaddy cannot access the email accounts to determine their status.

79. Mr. Celentano's acts constitute tortious interference with prospective economic advantage under New Jersey common law.

WHEREFORE, Ms. Psarakis demands judgment and prays for relief from this Court as follows:

a. Ms. Psarakis requests that the Court issue an Order preliminarily and permanently restraining and enjoining Mr. Celentano and all those who act in concert or participation with him from marketing, promoting or selling services using the Marks, registering domain names incorporating the Marks or otherwise using the Marks;

b. Ordering Defendant to immediately take all steps necessary to reactivate the accounts associated with the Email Addresses if necessary and transfer or take all steps necessary to effectuate the transfer of same to Ms. Psarakis;

c. Ordering Mr. Celentano to immediately take all steps necessary to effectuate an Account Change for the Foodpreneur Domain Name and for the FoodpreneurBootcamp Domain Name to Ms. Psarakis;

d. Preliminarily and permanently restrain and enjoin GoDaddy from removing the accounts associated with the Email Addresses from its servers and demanding GoDaddy to facilitate the transfer of the accounts associated with the Email Addresses to Ms. Psarakis

e. Preliminarily and permanently restrain and enjoin GoDaddy from allowing the Domain Name from lapsing and demanding GoDaddy to facilitate the Account Change of the Domain Names incorporating the Marks from Mr. Celentano to Ms. Psarakis.

## SECOND COUNT

### Defendant's Trademark Infringement under 15 U.S.C. 1114

80. Ms. Psarakis repeats and makes a part hereof each and every allegation set forth in the paragraphs 1 through 63 of the Verified Complaint.

81. Mr. Celentano continues to market and promote his FoodBevXpert services in interstate commerce through the unauthorized use of Ms. Psarakis' registered trademark and as such has caused and is likely to continue to cause confusion among or mistake by or to deceive prospective or actual customers, in violation of Section 32 of the Lanham Act 15 U.S.C. 1114(1).

82. Mr. Celentano' s on-going acts of infringement are malicious, willful, deliberate and otherwise in bad faith.

83. Mr. Celentano's infringement has inflicted and continues to inflict irreparable harm on Ms. Psarakis.

84. Ms. Psarakis has no adequate remedy at law.

14

85.    No previous injunctive relief has been awarded with respect to this matter in this or any other case.

WHEREFORE, pursuant to 15 U.S.C. §1114 Ms. Psarakis demands judgment and prays for relief from this Court as follows

a.    Ms. Psarakis requests that the Court preliminarily and permanently restrain and enjoin Mr. Celentano and anyone acting in concert with him from using, on or in connection with any product or service, or the offering of same, in distribution, advertising, promotion, social media or using for any purpose whatsoever: the Mark or confusingly similar permutations thereof including the continued use of the Mark in connection with existing or future domain names and domain name registrations, active or otherwise; social media, websites, blog, or any other name, mark or term likely to cause mistake in the mind of the public or to deceive the public into the belief that Mr. Celentano's business and/or services are in any way associated with or related to Ms. Psarakis' services;

b.    To Order that Mr. Celentano immediately effectuate an Account Change of the www.thefoodpreneur.com domain name registration to Ms. Psarakis;

c.    To Order the Mr. Celentano immediately effectuate an Account Change of the www.thefoodpreneurbootcamp.com domain to Ms. Psarakis;

d.    To Order GoDaddy to immediately take all measures necessary to retain all emails and information associated with the esther@thefoodpreneur.com email and info@thefoodpreneur.com

email addresses and to arrange for their transfer to Ms. Psarakis;

e. To Order GoDaddy to immediately take all measures necessary to renew the www.thefoodpreneur.com domain name and transfer same to Ms. Psarakis;

f. To Order GoDaddy to immediately take all measures necessary to maintain and effectuate the account change of the www.thefoodpreneurbootcamp.com domain name to Ms. Psarakis.

g. Directing Mr. Celentano to account to Ms. Psarakis for any and all profits derived by him for the sale of products or services through the use of the infringing Mark or the domain name;

h. Awarding Plaintiff a monetary judgment against Mr. Celentano for the maximum allowable damages pursuant to 15 U.S.C. §1117;

i. Awarding Plaintiff a monetary judgment against Mr. Celentano for all costs and reasonable attorney's fees pursuant to 15 U.S.C. §1117

## THIRD COUNT

### Trademark Infringement and Unfair Competition Under
### 15 U.S.C. §1125

86. Ms. Psarakis repeats and makes a part hereof each and every allegation set forth in the paragraphs 1 through 63 of the Verified Complaint.

87. Mr. Celentano continues to market and promote his FoodBevXpert services through the unauthorized use of Ms. Psarakis' Mark and Tag Line and as such has caused and is likely

16

to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 43 of the Lanham Act. Mr. Celentano continues to use the Marks in interstate commerce in connection with the offering of his goods and services, without her consent and such use has and is likely to cause confusion, or to cause mistake, or to deceive consumers in the marketplace.

88.    Mr. Celentano' s on-going acts of infringement in violation of Section 43 of the Lanham Act are malicious, willful, deliberate and otherwise in bad faith.

89.    Mr. Celentano's violation of Section 43 of the Lanham act has inflicted and continues to inflict irreparable harm on Ms. Psarakis.

90.    Ms. Psarakis has no adequate remedy at law.

91.    No previous injunctive relief has been awarded with respect to this matter in this or any other case.

WHEREFORE, Ms. Psarakis demands judgment and prays for relief from this Court as follows

a.    Ms. Psarakis requests that the Court preliminarily and permanently restrain and enjoin Mr. Celentano and anyone acting in concert with him from using, on or in connection with any product or service, or the offering of same, in distribution, advertising, promotion, social media or using for any purpose whatsoever: the Mark or confusingly similar permutation thereof including the continued use of the Mark in connection with existing or future domain names and domain name registrations, active or otherwise; social media, websites, blog, or any other

name, mark or term likely to cause mistake in the mind of the public or to deceive the public into the belief that Mr. Celentano's business and/or services are in any way associated with or related to Ms. Psarakis' services;

b. To Order that Mr. Celentano immediately effectuate the Account Change of the www.thefoodpreneur.com domain registration to Ms. Psarakis;

c. To Order the Mr. Celentano immediately effectuate the Account Change of the www.thefoodpreneurbootcamp.com domain registration to Ms. Psarakis.

d. To preliminarily and permanently restrain and enjoin Mr. Celentano from the use of the Tag Line or any slogans confusingly similar to the Tag Line;

e. To Order GoDaddy to immediately take all measures necessary to retain all emails and information associated with the esther@thefoodpreneur.com email and info@thefoodpreneur.com email addresses and to arrange for their transfer to Ms. Psarakis;

f. To Order GoDaddy to immediately take all measures necessary to effectuate the Account Change of the www.thefoodpreneur.com domain name to Ms. Psarakis;

g. To Order GoDaddy to immediately take all measures necessary to maintain and effectuate the Account Change of the www.thefoodpreneurbootcamp.com domain to Ms. Psarakis;

h. Directing Mr. Celentano to account to Ms. Psarakis for any and all profits derived by him for the sale of products

or services through the use of the infringing Mark or the domain names;

i. Awarding Plaintiff a monetary judgment against Mr. Celentano for the maximum allowable damages pursuant to 15 U.S.C. §1117;

j. Awarding Plaintiff a monetary judgment against Mr. Celentano for all costs and reasonable attorney's fees pursuant to 15 U.S.C. §1117

## FOURTH COUNT

### Anticybersqautting Consumer Protection Act 15 U.S.C. §1125(d)

92. Ms. Psarakis repeats and makes a part hereof each and every allegation set forth in the paragraphs 1 through 63 of the Verified Complaint.

93. Upon information and belief, Mr. Celentano has a bad faith intent to profit from the registration and use of the Domain Names demonstrated by his diversion of consumers from Ms. Psarakis' online location to his www.foodbevxpert.com online location;

94. Mr. Celentano has offered to sell the domain name to Ms. Psarakis without having an intent to use the domain name in the bona fide offering of any goods or services and in any case such use would be infringing upon Ms. Psarakis' Marks;

95. Mr. Celentano's actions are harming the goodwill represented by the Mark for his commercial gain all with full knowledge that Ms. Psarakis did not authorize the redirection of the Domain Names, has demanded transfer of the Domain Names and

19

that the infringing uses are causing confusion in the marketplace.

96. By using the Mark as described Mr. Celentano has caused and is likely to cause confusion, mistake, or deception as to the origin of the services provided by Ms. Psarakis.

97. As a result of his wrongful and infringing conduct, Mr. Celentano is liable to Ms. Psarakis for violating 15 U.S.C. 1125(d)(1).

WHEREFORE, Ms. Psarakis demands judgment and prays for relief from this Court pursuant to 15 U.S.C. 1115(d) as follows:

a. Ms. Psarakis seeks immediate permanent injunctive relief in the form of the Account Change of the Domain Names as provided for in the Act;

b. Statutory damages as provided for under 15 U.S.C. §1125(d)(1) of the maximum amount for Mr. Celentano's willful acts;

c. An Order directing GoDaddy to effectuate an Account Change of the Domain Names to Ms. Psarakis' account.

### FIFTH COUNT

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER COMMON LAW

98. Ms. Psarakis repeats and makes a part hereof each and every allegation set forth in the paragraphs 1 through 63 of the Verified Complaint.

99. Mr. Celentano's willful and deliberate acts constitute common law trademark infringement of Ms. Psarakis' good will and

unfair competition in New Jersey and, in other states where Mr. Celentano sells, offers and advertises his goods and services by reason of which Ms. Psarakis has suffered and will continue to suffer irreparable injury.

WHEREFORE, Ms. Psarakis demands judgment and prays for relief from this Court as follows Preliminarily and permanently enjoin Mr. Celentano and all person in active concert or participation with him from infringing Ms. Psarakis' Marks and from unfair competition with Ms. Psarakis;

a. Direct Mr. Celentano to transfer the Domain Names to Ms. Psarakis;

b. Award damages, including punitive damages for Mr. Celentano's acts of unfair competition; and

c. Grant to Ms. Psarakis such further relief as may be equitable and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury on all issues so triable in accordance with Fed. R. Civ. P. 38 and L. Civ.R 38.1.

Respectfully submitted,

Kristen A. Perry
Attorney for Ms. Psarakis,
Esther Psarakis

By: _____
Kristen A. Perry

Dated: April 27, 2015

21

CERTIFICATION PURSUANT TO L. CIV.R.11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Kristen A. Perry
Attorney for Ms. Psarakis,
Esther Psarakis

Kristen A. Perry

Dated: April 27, 2015

## **VERIFICATION**

STATE OF NEW JERSEY )
                      ) ss:
COUNTY OF Hunterdon )

Esther Psarakis, of full age, being duly sworn according to law, upon her oath, deposes and says:

I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge.

ESTHER PSARAKIS

Sworn and subscribed to before
me this 27 day of April, 2015

Notary Public
My Commission Expires

RENEE M. BALLENTINE
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES JULY 15, 2016

23